**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHIRAG S.

    *Plaintiff,*

           v.

FRANK BISIGNANO, Commissioner of the
Social Security Administration,

    *Defendant.*

Case No. 1:24-cv-06275

Hon. Beth W. Jantz

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. §405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Chirag S.'s[1] application for Disability Insurance Benefits (DIB). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). *See* Dkt. 8. For the reasons stated below, Plaintiff's Brief (Dkt. 13), which the Court construes as a motion to reverse or remand the Social Security Administration's decision, is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is GRANTED. The Commissioner's decision is affirmed.

**BACKGROUND**

Chirag S. applied for DIB on August 19, 2021, alleging he became disabled on April 16, 2021, due to coronary artery disease and other thyroid disorders. *See* Certified Admin. Record (R.) 219–20, 252 (Dkt. 12). The Social Security Administration denied Chirag's claim initially on April 29, 2022, and upon reconsideration on September 14, 2022. R. 87, 97. At Chirag's request, an Administrative Law Judge (ALJ) conducted a hearing on April 12, 2023. *See* R. 37–78. The ALJ

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

denied Chirag's claim in a written opinion dated October 23, 2023. *See* R. 17–30. The Appeals Council denied Chirag's request for review, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g). *See* R. 1–3; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ applied the five-step analytical process required by 20 C.F.R. § 404.1520. At Step 1, the ALJ concluded that Chirag had not engaged in substantial gainful activity since April 16, 2021. R. 19. At Step 2, the ALJ concluded that Chirag had the severe impairment of ischemia, and the non-severe impairments of thyroid disorder with hypothyroidism, essential hypertension, hyperlipidemia, multiple joint arthralgias and myalgias, history of oral cancer, and depression. R.20–23. In evaluating Chirag's depression, the ALJ applied the Paragraph B criteria and determined that Chirag had no limitations in his abilities to understand, remember, or apply information, and to interact with others; and mild limitations in his abilities to concentrate, persist, or maintain pace, and to adapt or manage himself. R. 20–23. At Step 3, the ALJ determined that Chirag's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's Listings of Impairments. *See* R. 23.

Before Step 4, the ALJ determined that Chirag had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §404.1567(b), with the following limitations:

> The claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He is able to stand and/or walk for a total of about 6 out of 8 hours. He is able to sit for a total of about 6 out of 8 hours. The claimant can occasionally climb ramps and stairs, and he can occasionally stoop, kneel, balance, crouch and crawl, but he can never climb ladders, ropes or scaffolds. The claimant should avoid concentrated exposure to extreme heat or cold. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery.

R. 23–24. Importantly for the purposes of this case, the RFC does not include any limitations addressing Chirag's mild limitations in his abilities to concentrate, persist, or maintain pace, or to

adapt or manage himself. R. 23–24. At Steps 4 and 5, the ALJ concluded that Chirag could not perform his past work as a chiropractor, but that he was capable of performing the functions of a "small business manager," of which there are 1.1 million jobs in the national economy. R. 28–30. Based on these findings, the ALJ concluded that Chirag was not disabled during the relevant period. R. 30.

## STANDARD OF REVIEW

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## DISCUSSION

Chirag's sole argument for remand is that the ALJ "fail[ed] to account for [his] mild psychological limitations" in the Paragraph B criteria, "both in the RFC and in the hypothetical posed to the [vocational expert]." Dkt. 13 at 7. The Court disagrees.

3

"RFC is what an individual can still do despite his or her limitations." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities." *Id.* "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Seventh Circuit "caselaw emphasizes that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Nevertheless, "the existence of mild mental limitations does not always necessitate the inclusion of non-exertional accommodations in the RFC." *Michael A. v. Kijakazi*, No. 20-cv-04585, 2023 WL 6311535, at *6 (N.D. Ill. Sept. 28, 2023); *James G. v. Saul*, No. 18-cv-04794, 2019 WL 4305518, at *6 (N.D. Ill. Sept. 11, 2019) ("The Seventh Circuit has recognized that 'a mild, or even a moderate, limitation in an area of mental functioning does not prevent an individual from functioning satisfactorily.'") (quoting *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013)). "An ALJ properly may conclude on a given record that no non-exertional limitations in the RFC are required, if he 'builds an accurate and logical bridge between the evidence and his conclusion.'" *Michael A.*, 2023 WL 6311535, at *6 (quoting *Kathleen C. v. Saul*, No. 19-cv-01564, 2020 WL 2219047, at *3 (N.D. Ill. May 7, 2020)) (internal quotation marks and alterations omitted).

4

The ALJ's determination that Chirag's mild limitations do not warrant greater restrictions in the RFC is supported by the medical evidence. In assessing Chirag's RFC, the ALJ relied on the opinions and treatment notes of several medical sources.

First, the ALJ considered the opinion of the Disability Determination Service (DDS) on reconsideration. R. 27. DDS opined that Chirag had only mild limitations in two of the Paragraph B criteria and that his "mental MDI [medically determinable impairment] is associated with no significantly limiting symptoms," and it recommended no mental RFC limitations. R. 88–96. The ALJ found this opinion persuasive because it was "consistent with the treatment records." R. 27.

Second, the ALJ considered an undated opinion of Licensed Professional Counselor (LPC) David Tobey, who had treated Chirag since April 2022. R. 27. LPC Tobey opined that Chirag had "engaged within the therapeutic process and made clinical gains," and that "[h]is depression may improve were he able to return to work, but this does not seem possible due to his physical/medical conditions." R. 1077. Nevertheless, LPC Tobey did not recommend any mental RFC limitations, and to the contrary opined that Chirag's "depression, irritability, mood swings, or anxiety would not negatively impact his capacity to function at work." R. 1077. The ALJ found this opinion "persuasive to the extent that it suggests the claimant's limitations are primarily physical rather than mental and emotional." R. 27.

Third, the ALJ looked to another undated opinion of LPC Tobey, which acknowledged that Chirag's depression "worsened" following his cancer diagnosis "due to the impact of worsening chronic pain, anxiety about upcoming treatment and surges in pain associated with medical treat-ment, and loss of meaning associated with the loss of his ability to maintain his professional ca-reer." R. 1302–03. However, the ALJ found this opinion "not fully persuasive" because Chirag shortly thereafter underwent surgery and radiation treatment, and his treating psychiatrist, Adrian

5

Zhubi, M.D., observed in his own treatment notes that Chirag's mood was "better" and "stable"; he "was oriented with normal thought process, thought content, intellect, and speech"; his "attention and concentration were adequate, and his memory was intact"; and that "[b]y February 1, 2021, the claimant was doing fine with good, stable mood." R. 28 (citing R. 1234–39).[2]

These opinions and treatment notes constitute substantial evidence supporting the ALJ's decision not to include any mental limitations in Chirag's RFC. *See, e.g.*, *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) ("[T]he ALJ's determination reflected adequate consideration of Morales's medical history (as documented in her medical records), the evaluation from her treating nurse practitioner, the assessments of several experts, and Morales's own testimony. Based on this evidence, the ALJ reasonably determined that Morales's mental limitations were mild and did not warrant or require any functional limitations."); *Felts v. Saul*, 797 F. App'x 266, 269–70 (7th Cir. 2019) (affirming the ALJ decision that rated the claimant as having no more than mild limitations in the Paragraph B criteria and including no mental limitations in the RFC); *Deborah A. v. Saul*, No. 19-cv-06628, 2021 WL 5882137, at *2 (N.D. Ill. Dec. 13, 2021) (same); *Applewhite v. Colvin*, 54 F. Supp. 3d 945, 954 (N.D. Ill. 2014) ("The ALJ clearly considered her mental impairment in his RFC analysis, but she concluded that the mild limitations that resulted were not significant enough to warrant the imposition of any additional non-exertional RFC limitations.").

---

[2] The ALJ also considered these and other pieces of medical evidence earlier in his opinion when evaluating the Paragraph B criteria at Step 2. *See* R. 23 (finding that Chirag's "attention and concentration were adequate," "his memory was intact," and "[h]e drives and handles his own finances," and citing the mental status examination notes of Jarryd E. McGuire, PMHNP, and Dr. Zhubi spanning several months of examinations, and Chirag's function report); R. 23 (finding that Chirag "performs activities of daily living independently," "has no problems with personal care," and "drives, shops, and handles his own finances," and citing Chirag's function report and the cardiac surgery consult notes of Robert G. Kummerer, M.D.).

The Court also disagrees with Chirag's argument that the ALJ failed to adequately explain "the conflict" between his Paragraph B findings and his RFC assessment. Dkt. 13 at 7. "All [courts] require is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell*, 97 F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). The ALJ did that here by discussing in the RFC section the opinions and treatment notes of the DDS, LPC Tobey, and Dr. Zhubi, discussing the other medical evidence at Step 2, and explaining why and to what extent he found each of them persuasive. *See* R. 26–28. The ALJ's written opinion demonstrates that he "considered all limitations supported by record evidence." *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019), and the Court has "no difficulty following the ALJ's logical bridge from the Paragraph B evidence . . . to the RFC that contains no non-exertional limitations to accommodate Plaintiff's mild Paragraph B limitations," *Michael A.*, 2023 WL 6311535, at *6.

Likewise, the ALJ's questioning of the vocational expert was sufficient. The ALJ first asked the vocational expert to describe and classify Chirag's prior work experience as a chiropractor running his own practice. R. 63–65. The ALJ then posed a hypothetical question to the vocational expert whether a person with Chirag's background and RFC could perform his past work. R. 65–66. The vocational expert testified that such an individual could not perform the work of a chiropractor, but could perform the functions of a small business manager, of which there were approximately 1.1 million jobs in the national economy. R. 66–68. The ALJ then asked further: "And what would these jobs generally allow, in terms of absences, off-task tolerances, and breaks?" R. 68. The vocational expert responded:

> Well, certainly, someone could be absent for two or more days, with a valid medical excuse. But it becomes a problem if this is a regular occurrence, every month

7

they're absent, tardy, or leaving early two or more days. At that case, they're not a reliable worker, and eventually they'll lose their employment. Certainly, while work doesn't allow anyone to be 100% on task, but I do think if someone is off task 15% of the workday which is about eight minutes every hour—at that rate, they're just not going to be productive enough to be successful in their employment. And there would be no work for this person. Normally get a break every two hours, approximately 15 minutes for a coffee break, 30 minutes to an hour for lunch, followed by another coffee break. Typically, if someone needs to take—go to the bathroom, they should be able to take a brief bathroom break of about five minutes before and after lunch, with a supervisor's consent. If they need more frequent breaks or longer-in-duration breaks, 10, 15, 20 minutes, that would be work-preclusive, and there would be no work for this individual.

R. 68–69.

As explained, the ALJ's formulation of Chirag's RFC was proper. For that reason, the ALJ's decision not to include any mental limitations in his hypothetical questions to the vocational expert was proper, too. *See Kruckow v. Bisignano*, No. 23-2433, 2026 WL 27807, at \*3 (7th Cir. Jan. 5, 2026) ("These statements [in the ALJ's RFC assessment] demonstrate that the ALJ considered Kruckow's mental limitations but did not find them significant enough to limit his work capacity. This is also why the ALJ did not err when she did not add Kruckow's mental limitations to the hypothetical criteria she posed to the vocational expert during the hearing."); *Pamela B. v. O'Malley*, No. 23-cv-05221, 2024 WL 342493, at \*6 (N.D. Ill. Jan. 30, 2024) ("While Pamela takes additionally issue with the hypothetical's posed to the VE, the ALJ has an 'final responsibility' for determining a claimant's RFC and need only include limitations supported by the medical record. [*sic*]") (quoting 20 C.F.R. §404.1527(d)(2)). Additionally regarding Chirag's argument that the ALJ posed to the vocational expert an insufficient hypothetical and the vocational expert's response above, Chirag does not point to any evidence—medical or other—showing how his mild Paragraph B limitations would cause him to be absent or off-task or require breaks to the extent that the vocational expert testified would be work-preclusive. *See Kruckow*, 2026 WL 27807, at \*3 (rejecting the argument that the ALJ should have included greater mental limitations in the RFC

because the claimant "bore the burden of establishing that his specific limitations affected his ability to work, but he did not meet that burden"); *Pamela B.*, 2024 WL 342493, at *6 n.12 (rejecting the argument that the claimant's RFC should have incorporated the off-task time the vocational expert testified would be work-preclusive because "[i]t is claimant's burden to identify 'evidence-based restrictions that the ALJ could include in a revised RFC finding on remand'") (quoting *Jozefyk*, 923 F.3d at 496); *Clemente A. v. Saul*, No. 18-cv-06345, 2019 WL 3973117, at *5 (N.D. Ill. Aug. 22, 2019) (noting that "the ALJ is only required to include limitations that are supported by the record in the hypotheticals posed to the [vocational expert] and in the RFC assessment," and that the ALJ is "not required to discuss every response the [vocational expert] gave to hypotheticals the ALJ ultimately discarded").

Chirag relies heavily on *Vrdoljak v. Kijakazi*, 665 F. Supp. 3d 923 (N.D. Ill. 2023), which is distinguishable. In that case, an ALJ "relied on the medical record" to acknowledge that a claimant's depression caused mild mental limitations—including the claimant's own testimony that her medication was sometimes ineffective in controlling her symptoms, and that she feared leaving her house—but then failed to pose those limitations to the vocational expert and "did not articulate why those mild limitations required no restrictions" in the RFC. *See Vrdoljak*, 665 F. Supp. 3d at 931. Critically, unlike *Vrdoljak*, Chirag does not point to any medical opinion recommending greater RFC limitations than what the ALJ assessed. Nor does he point to any other medical evidence showing how his mild Paragraph B limitations bear on his asserted inability to perform job functions. Instead, he merely asserts that the "failure to account for [his] mild psychological limitations, both in the RFC and in the hypothetical posed to the [vocational expert], warrants remand." Dkt. 13 at 7. But for a claimant on appeal, "[i]t is not enough to criticize the ALJ's decision about

9

[his] functional capacity to work. [H]e must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales*, 103 F.4th at 470.

Moreover, since *Vrdoljak*, many courts in this District have affirmed ALJ decisions like this one, which rely on medical opinions stating that a claimant's mild Paragraph B limitations did not warrant any work-related restrictions. *See, e.g.*, *Michelle P. v. Kijakazi*, No. 20-cv-04140, 2023 WL 3727917, at *9 (N.D. Ill. May 30, 2023) (rejecting the argument that the RFC should have included greater limitations because 'it is unclear what kinds of work restrictions might address [Plaintiff's] limitations in concentration, persistence, or pace because [s]he hypothesizes none'") (quoting *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021)); *Kenneth K. v. Kijakazi*, No. 23-cv-00003, 2023 WL 4473034, at *1–2 (N.D. Ill. July 11, 2023) (affirming an RFC without any mental limitations even though the ALJ found mild limitations in the Paragraph B criteria), *aff'd sub nom. Kruckow*, 2026 WL 27807; *Jeffrey G. v. O'Malley*, No. 23-cv-02876, 2024 WL 308333, at *7 (N.D. Ill. Jan. 26, 2024) (rejecting the argument that the ALJ failed to sufficiently consider the claimant's impairments because the ALJ properly evaluated the evidence of the claimant's anxiety disorder and because the ALJ "also assessed the 'paragraph B' criteria and ultimately determined that [the claimant's] 'medically determinable mental impairments caused no more than 'a mild' limitation in any of the functional areas'").

Consistent with these cases and those discussed above, the Court concludes that the ALJ did not err in assessing Chirag's RFC or questioning the vocational expert.

### CONCLUSION

Plaintiff's Brief (Dkt. 13), which the Court construes as a motion to reverse or remand the Social Security Administration's decision, is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is GRANTED. The Commissioner's decision is affirmed. Because the

10

Court affirms the ALJ's decision, it does not address Chirag's argument that the Court should remand with an order directing the award of outright benefits.


SO ORDERED.


DATED: March 17, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

11